Filed 10/25/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re G.R., a Person Coming Under the Juvenile Court Law.<br><br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>R.R.,<br><br>     Defendant and Appellant. | B332699<br><br>Los Angeles County<br>Super. Ct. No. DK23174 |

APPEAL from an order of the Superior Court of Los Angeles County, Mary E. Kelly, Judge. Dismissed.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

_____

R.R., alleged father of G.R., appeals the juvenile court's exit order requiring his visitation with G.R. be monitored. We dismiss his appeal. Unspecified statutory citations are to the Welfare and Institutions Code.

G.R. lived with her mother and had no contact with R.R. In 2017, G.R. was hospitalized and diagnosed with disruptive mood dysregulation disorder. When the mother failed to get G.R. the mental health services she needed, the Los Angeles Department of Child and Family Services became involved. The mother told the Department she did not have contact information for G.R.'s father.

On June 5, 2017, the juvenile court found R.R. was G.R.'s alleged father. The minute order from the hearing reflected that the court found R.R. to be the presumed father. However, the juvenile court later amended that minute order to show accurately that it found R.R. to be an alleged father. A later report from the Department stated R.R. was incarcerated for domestic violence. A background investigation revealed R.R. had an extensive criminal history. At an October 2017 hearing, the juvenile court denied services to R.R. because he was only an alleged father and ordered no visits until R.R. contacted the Department.

In May 2018, the juvenile court removed G.R. from her mother's custody and placed her with a maternal aunt. In November 2020, R.R. contacted the Department and stated he wanted to have a relationship with G.R. G.R. said she was willing to have visits with R.R. In March 2021, the Department reported that R.R. had not returned its call to set up visits.

In December 2022, R.R. called the Department to ask about placement options for G.R., stating that his wife and her two

children lived in Los Angeles. The social worker told R.R. he would have to file a section 388 petition. When asked why he had not moved forward with services and visits two years before, R.R. said he did not know G.R. was having behavioral issues and he now wanted to be in her life and help her.

In January 2023, R.R. filed a deficient section 388 petition, which the juvenile court denied. In June 2023, G.R. reported she had spoken with R.R. by phone. In August 2023, G.R. said she was not ready for in-person visits with R.R. In September 2023, the juvenile court appointed G.R.'s caregiver as her legal guardian, ordered monitored visits for the mother and R.R., and terminated its jurisdiction.

R.R. appeals the juvenile court's order that his visits with G.R. be monitored. Because he is only an alleged father, he cannot show he is aggrieved by this order. We therefore dismiss his appeal.

The dependency statutes distinguish between the rights of alleged, biological, and presumed fathers. (*In re O.S.* (2002) 102 Cal.App.4th 1402, 1406–1407 (*O.S.*).) An alleged father is one who has not established paternity. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 448–449, fn.15.) A biological father is one who has established paternity but has not achieved presumed father status. (*Ibid.*) A presumed father is one who satisfies certain enumerated statutory criteria, such as being married to the mother of the child or receiving the child into his home and holding the child out as his. (*In re Jesusa V.* (2004) 32 Cal.4th 588, 603; Fam. Code § 7611.)

Under the dependency statutes, an alleged father is entitled to notice of the proceedings so that he may appear, assert his position, and attempt to establish paternity. (*In re Kobe A.*

(2007) 146 Cal.App.4th 1113, 1120.) Unless and until an alleged father becomes a presumed father, he has no rights to custody, reunification services, or visits. (*O.S.*, *supra*, 102 Cal.App.4th at p. 1410.) The juvenile court may grant services to a biological father if it is in the child's best interests. (*Ibid*.) An alleged father has no current interest because his paternity has not yet been established. (*In re Joseph G.* (2000) 83 Cal.App.4th 712, 715.)

Here, although R.R. appeared and asserted a position, thus arguably becoming a party to the proceedings, he did not establish paternity. (*In re Baby Boy V.* (2006) 140 Cal.App.4th 1108, 1117 [alleged father becomes party to the proceedings when he appears and asserts a position].) R.R. makes much of the juvenile court's error in listing him as a presumed father in the June 2017 minute order, but concedes the court later amended the order to correct its mistake. He makes no argument that he qualifies as or that the court should have found him to be a biological or presumed father.

Only a party aggrieved by the court's order may appeal it. (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1034 [to have standing, a person must have legal rights that may suffer some injury].) R.R. argues that because the juvenile court made specific visitation orders for him "this verified that [R.R.] had a known current interest." He cites no authority for this proposition and we reject it. As an alleged father, R.R. did not have a current interest and the trial court's exercise of its discretion in crafting an exit order it thought in the best interests of G.R. does not change that. R.R. had no right to visitation because he did not change his status from an alleged father. (*Clifford S. v. Superior Court* (1995) 38 Cal.App.4th 747,

4

752 ["If a person is given services to which he or she is not entitled, there is no right to complain on appeal of the court's findings"].)  Thus, he has no standing to appeal the juvenile court's order about his visitation.

## DISPOSITION

We dismiss the appeal.


                                                    WILEY, J.

We concur:



GRIMES, Acting P. J.



VIRAMONTES, J.