Filed 9/29/17; Modified and Certified for Publication 10/30/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| VITATECH INTERNATIONAL, INC., | |
|    Plaintiff and Respondent, | G053477 |
|      v. | (Super. Ct. No. 30-2011-00459259) |
| ALAN R. SPORN et al., | O P I N I O N |
|    Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Sheila Fell, Judge. Reversed and remanded. Motion for judicial notice. Granted.

Friedman Stroffe & Gerard, Andrew R. Nelson and Sasan K. Behnood for Defendants and Appellants.

Steponovich & Associates and Michael J. Steponovich, Jr., for Plaintiff and Respondent.

\*        \*        \*

Seeking more than $166,000 in damages, plaintiff Vitatech International, Inc. (Vitatech) filed this breach of contract lawsuit against defendants National Marketing, Inc., CortiSlim International, formerly known as National Marketing, Inc., CortiSlim International, LLC, and Alan R. Sporn (collectively, Defendants). On the eve of trial, the parties settled for a one-time payment of $75,000. As part of the settlement, Defendants stipulated to entry of judgment against them "in the full prayer of the Complaint," but Vitatech agreed to "forbear" from filing the stipulation and to accept the $75,000 "as full Settlement of its claims against Defendants" if they paid by the designated date. When Defendants failed to pay, Vitatech filed the stipulation and the trial court entered judgment against Defendants for more than $300,000, which included compensatory damages, prejudgment interest, attorney fees, and costs.

Sporn and appellant CortiSlim International, Inc. (collectively, Appellants) moved to vacate the judgment, arguing it was an unenforceable penalty and liquidated damages provision under Civil Code section 1671, subdivision (b) (section 1671(b)). The trial court denied the motion because it found the judgment's higher amount was not a penalty or liquidated damages provision subject to section 1671(b). Rather, the court concluded the reduced amount Vitatech agreed to accept was merely a discount if Defendants paid their debt as agreed.

We reverse and remand for the trial court to grant the motion and enter a new judgment for the $75,000 settlement amount, plus trial court costs. Under well-established precedent, including this court's decision in *Greentree Financial Group, Inc. v. Execute Sports, Inc.* (2008) 163 Cal.App.4th 495 (*Greentree*), the stipulated judgment for more than four times the amount Vitatech agreed to accept as full settlement of its claims is an unenforceable penalty because it bears no reasonable relationship to the range of damages the parties could have anticipated would result from Defendants' failure timely to pay the settlement amount. Contrary to Vitatech's argument, the stipulation for entry of judgment is not merely a permissible discount provision because

2

the stipulation compromises disputed claims and resolves pending litigation. Although Defendants stipulated to entry of judgment if they did not timely pay, they never admitted liability on the underlying claims or the amount of damages allegedly caused by the breach of the underlying contract.

We also reject Vitatech's contention CortiSlim International, Inc. lacks standing to appeal the trial court's order because Vitatech did not name it as a defendant and the judgment did not award any relief against it. Vitatech ignores that its complaint included allegations that CortiSlim International, Inc. was liable for Defendants' debts, CortiSlim International, Inc. answered the complaint and fully participated in the litigation without objection, and Vitatech focused its postjudgment collection efforts on CortiSlim International, Inc.'s potential liability for Defendants' debts.

I

FACTS AND PROCEDURAL HISTORY

Vitatech and National Marketing, Inc. entered into a contract for Vitatech to manufacture certain products for National Marketing, Inc. In March 2011, Vitatech filed this lawsuit against Defendants alleging National Marketing, Inc. failed to pay the invoices for the products it purchased. The operative first amended complaint did not name CortiSlim International, Inc., as a defendant, but it alleged CortiSlim International, Inc. and CortiSlim International, LLC were continuations of National Marketing, Inc. Vitatech named Sporn as a defendant based on a personal guaranty he signed and also alleged Sporn is the alter ego of all entity defendants. The Complaint sought $166,372.14 in compensatory damages, plus attorney fees and costs, based on claims for (1) breach of contract; (2) breach of oral contract; (3) breach of implied in fact contract; (4) open book account; (5) account stated; and (6) breach of guaranty.

In August 2011, CortiSlim International, LLC and CortiSlim International, Inc. filed an answer asserting numerous affirmative defenses, including that the underlying contract was unenforceable, Vitatech breached the underlying contract, and

3

Vitatech improperly manufactured and labeled its products. In February 2012, Sporn and National Marketing, Inc. filed an answer alleging many of the same affirmative defenses.

In September 2014, the parties agreed to settle this lawsuit. According to Vitatech's president, Defendants agreed to pay Vitatech $75,000 on or before June 5, 2015, and the parties entered into a stipulation for entry of judgment that authorized Vitatech to have the court enter judgment against Defendants for the full amount alleged in the complaint if they failed to make the settlement payment. Upon timely receipt of the settlement payment, Vitatech agreed to dismiss its complaint with prejudice.

The only written agreement setting forth the terms of the parties' settlement was a stipulation that provided "judgment shall be entered against Defendants Alan R. Sporn, an individual; CortiSlim International formerly known as National Marketing, Inc.; National Marketing, Inc. and CortiSlim International, LLC, in favor of [Vitatech], in the full prayer of the Complaint on file herein; [¶] . . . [but Vitatech] will forbear from the filing hereof and will accept, as full settlement of its claims against Defendants Alan R. Sporn, an individual; CortiSlim International formerly known as National Marketing, Inc.; National Marketing, Inc. and CortiSlim International, LLC, the principal sum of Seventy-Five Thousand Dollars ($75,000.00), payable in one (1) payment on or before June 5, 2015." Although the stipulation did not provide for entry of judgment against CortiSlim International, Inc., that entity signed the stipulation along with Sporn, CortiSlim International, formerly known as National Marketing, Inc., and National Marketing, Inc. CortiSlim International, LLC did not sign the stipulation.

Defendants failed to make the settlement payment and Vitatech asked the trial court to enter judgment based on the stipulation. Vitatech sought a judgment for $303,620.12, comprised of $166,372.14 in compensatory damages, $104,427.01 in prejudgment interest, $28,315.00 in attorney fees, and $4,505.97 in costs. In July 2015,

4

the court entered judgment against Defendants in the amount requested. The judgment did not name CortiSlim International, Inc.

In November 2015, Appellants moved to vacate the judgment under Code of Civil Procedure section 473, subdivision (d) (section 473(d)). They argued the judgment was void because it constituted an unlawful penalty in violation of section 1671(b)'s prohibition against liquidated damages provisions that bear no reasonable relationship to the damages likely to be caused by the breach of contract. Vitatech opposed the motion, arguing the judgment is not a penalty or illegal liquidated damages provision because Defendants judicially admitted and stipulated to their liability in the full amount of the prayer for relief alleged in the complaint and the stipulated judgment merely enforces that acknowledgement. The $75,000 settlement amount, Vitatech contends, was merely a discount of the agreed-upon liability to encourage prompt and timely payment.

The trial court agreed with Vitatech and denied the motion, ruling that "Defendants were served with [Vitatech's] declarations re breach of the Stipulation and Request for Entry of Judgment prior to the Judgment being entered. The Stipulated Judgment was for the amount of the debt alleged in the Complaint. The reduced amount agreed by the parties represented a discount if the debt was paid as agreed. The amount of the judgment did not represent a penalty; the lower amount represented a discount to Defendants. [¶] Defendants have not shown extrinsic fraud or mistake. Nor have Defendants shown a meritorious defense, satisfactory excuse, or diligence. Defendants have not shown special circumstances to justify setting the Judgment aside. Further, the Judgment is not void or voidable." This appeal followed.

5

DISCUSSION

A.   *CortiSlim International, Inc. Has Standing to Appeal*

Vitatech contends CortiSlim International, Inc. lacks standing to appeal because CortiSlim International, Inc. was not a party of record in the trial court, the stipulation for entry of judgment did not refer to it, and the court did not enter the judgment against it. We disagree.[1]

"Any party aggrieved" by an order or judgment has standing to appeal. (Code Civ. Proc., § 902.) The test for determining appellate standing is twofold. The party seeking to appeal must (1) be a party of record in the trial court, and (2) be aggrieved by the order or judgment from which the appeal is taken. (*In re Marriage of Burwell* (2013) 221 Cal.App.4th 1, 13 (*Burwell*).) A party is aggrieved for appellate standing purposes if the party's "'"'rights or interests are injuriously affected by the judgment [or order].'"'" (*People ex rel. Allstate Ins. Co. v. Dahan* (2016) 3 Cal.App.5th 372, 376.) "The appellant's 'interest "'must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment [or order].'"'" (*Ibid.*) Standing is a jurisdictional requirement (*Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947), but we must liberally construe standing and resolve all doubts about it in favor of the right to appeal (*Burwell*, at p. 14; *In re L. Y. L.* (2002) 101 Cal.App.4th 942, 948).

Here, CortiSlim International, Inc. was a party of record in the trial court. Although the complaint did not name CortiSlim International, Inc. as a defendant, it included several allegations about the company. For example, the complaint alleged Sporn was the president of CortiSlim International, Inc. when he ordered and purchased the products on CortiSlim International, Inc.'s behalf. The complaint further alleged

---

[1]   We also note Vitatech failed to properly challenge CortiSlim International, Inc.'s standing to appeal. A party seeking to dismiss an opponent's appeal based on a lack of appellate standing must file a separate motion to dismiss in the appellate court. (*Halliburton Energy Services, Inc. v. Department of Transportation* (2013) 220 Cal.App.4th 87, 106; *Jocer Enterprises, Inc. v. Price* (2010) 183 Cal.App.4th 559, 565; *American Alternative Energy Partners II v. Windridge, Inc.* (1996) 42 Cal.App.4th 551, 557-558.) Vitatech improperly raised the issue in its brief rather than file a separate motion.

CortiSlim International, Inc. was "simply a continuation of National Marketing, Inc. and is a new name but with essentially the same stockholders and officers." CortiSlim International, Inc. responded to these allegations by filing an answer to the complaint and fully participating in the litigation without any objection by Vitatech. Indeed, CortiSlim International, Inc. was one of the parties who brought the motion to vacate, and Vitatech did not challenge CortiSlim International, Inc.'s standing to do so in the trial court.

Citing *In re Joseph G.* (2000) 83 Cal.App.4th 712, 714-716, Vitatech argues CortiSlim International, Inc. is not a party of record with standing to appeal simply because its name appears in some of the documents filed in the trial court. CortiSlim International, Inc.'s involvement in this lawsuit, however, goes well beyond that. As explained above, it filed an answer, participated in the litigation, and filed the motion to vacate that is the subject of this appeal. Vitatech fails to explain how CortiSlim International, Inc. is not a party of record when these facts are considered.

CortiSlim International, Inc. also is an aggrieved party because it was one of the parties that brought the motion to vacate, and therefore necessarily was aggrieved by the order denying it. Moreover, CortiSlim International, Inc. was aggrieved by the judgment the motion sought to set aside. Vitatech points out neither the stipulation for entry of judgment nor the judgment expressly granted any relief against CortiSlim International, Inc. But CortiSlim International, Inc. signed the stipulation, the complaint included the foregoing allegations regarding its potential liability, and Vitatech has continued to pursue CortiSlim International, Inc. in postjudgment collection proceedings. For example, in seeking an order to conduct Sporn's judgment debtor examination, Vitatech's counsel filed a declaration requesting information about CortiSlim International, Inc., because counsel suspected the judgment debtors transferred their

7

assets to CortiSlim International, Inc. without adequate consideration.[2] These facts show that CortiSlim International, Inc. has a substantial pecuniary interest affected by the judgment.

Finally, on a practical level, we note that Vitatech's challenge to CortiSlim International, Inc.'s appellate standing would not end this appeal even if we agreed that corporation lacked standing. Sporn also is an appellant and Vitatech does not dispute his standing to appeal from the trial court's order denying the motion to vacate.[3]

B.      *The Trial Court Erred in Denying the Motion to Vacate*

1.      Governing Legal Principles on Liquidated Damages Provisions

"California law has . . . long recognized that a provision for liquidation of damages for contractual breach . . . can under some circumstances be designed as, and operate as, a contractual forfeiture. To prevent such operation, our laws place limits on liquidated damages clauses. Under the 1872 Civil Code, a provision by which damages for a breach of contract were determined in anticipation of breach was enforceable only if determining actual damages was impracticable or extremely difficult. (1872 Civ. Code, §§ 1670, 1671.) As amended in 1977, the code continues to apply that strict standard to liquidated damages clauses in certain contracts (consumer goods and services, and leases of residential real property (§ 1671, subds. (c), (d)), but somewhat liberalizes the rule as to other contracts: '[A] provision in a contract liquidating the damages for breach of the contract is valid unless the party seeking to invalidate the provision establishes that the

---

[2]      We grant Vitatech's motion to judicially notice this declaration and several governmental filings and listings relating to CortiSlim International, Inc., CortiSlim International, LLC, and National Marketing, Inc. Appellants did not oppose the motion.

[3]      Vitatech also argues the judgment is not appealable because it is a stipulated judgment. But Appellants are appealing from the order denying the motion to vacate the judgment, and not from the entry of the stipulated judgment.

8

provision was unreasonable under the circumstances existing at the time the contract was made.' (§ 1671, subd. (b).)" (*Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 976-977 (*Ridgley*); see *Krechuniak v. Noorzoy* (2017) 11 Cal.App.5th 713, 720 (*Krechuniak*).)

"A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671(b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach. The amount set as liquidated damages 'must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained.' [Citation.] In the absence of such relationship, a contractual clause purporting to predetermine damages 'must be construed as a penalty.'" (*Ridgley*, *supra*, 17 Cal.4th at p. 977.) "'The validity of the liquidated damages provision depends upon its reasonableness at the time the contract was made and not as it appears in retrospect. Accordingly, the amount of damages actually suffered has no bearing on the validity of the liquidated damages provision.'" (*Krechuniak*, *supra*, 11 Cal.App.5th at p. 721.)

"'A penalty provision operates to compel performance of an act [citation] and usually becomes effective only in the event of default [citation] upon which a forfeiture is compelled without regard to the damages sustained by the party aggrieved by the breach [citation]. The characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract.'" (*Ridgley*, *supra*, 17 Cal.4th at p. 977.)

"In short, '[a]n amount disproportionate to the anticipated damages is termed a "penalty." A contractual provision imposing a "penalty" is ineffective, and the wronged party can collect only the actual damages sustained.'" (*Ridgley*, *supra*, 17 Cal.4th at p. 977; see *Purcell v. Schweitzer* (2014) 224 Cal.App.4th 969, 974 (*Purcell*) ["'Absent a relationship between the liquidated damages and the damages the parties

9

anticipated would result from a breach, a liquidated damages clause will be construed as an unenforceable penalty'"].)

"A liquidated damages provision is not invalid merely because it is intended to encourage a party to perform, so long as it represents a reasonable attempt to anticipate the losses to be suffered. [Citation.] A court will interpret a liquidated damages clause according to its substance, and if it is otherwise valid, will uphold it even if the parties have referred to it as a penalty." (*Weber, Lipshie & Co. v. Christian* (1997) 52 Cal.App.4th 645, 656 (*Weber*); see *Ridgley*, *supra*, 17 Cal.4th at p. 979 ["'We have consistently ignored form and sought out the substance of arrangements which purport to legitimate penalties and forfeitures'"]; *Greentree*, *supra*, 163 Cal.App.4th at p. 499.)

Based on section 1671(b)'s presumption that liquidated damage provisions in nonconsumer contracts are valid, the party challenging the provision bears the burden to show the provision was unreasonable under the circumstances existing when the parties entered into the contract. (*Krechuniak*, *supra*, 11 Cal.App.5th at p. 721; see *Weber*, *supra*, 52 Cal.App.4th at p. 654.)

2.     Appellants Properly Sought to Vacate the Judgment Under Section 473(d)

Vitatech contends the trial court lacked authority to grant Appellants' motion because they improperly brought it under section 473(d). According to Vitatech, the stipulated judgment's alleged violation of section 1671(b) at most rendered the judgment voidable, but section 473(d) only authorizes a court to vacate a void judgment. Vitatech misconstrues the legal impact of a contract provision violating section 1671(b)'s prohibition on unlawful penalties.

A court's statutory authority to vacate a judgment or order under section 473(d) is limited to void judgments and orders. (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495-496.) And as Vitatech points out, our Supreme Court has repeatedly observed that jurisdictional errors in rendering a judgment or order

10

generally fall into two categories: "A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely act in excess of its jurisdiction or defined power, rendering the judgment voidable." (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56.) Here, Vitatech contends the court's judgment in its favor is at most voidable because no one disputes the trial court had fundamental authority over the subject matter, the questions presented, and the parties.

Vitatech, however, fails to recognize that a liquidated damages provision lacking a reasonable relationship to the range of damages the parties reasonably could have anticipated is unenforceable and void as against public policy. (Civ. Code, § 1599 ["Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest"]; *Sybron Corp. v. Clark Hosp. Supply Corp.* (1978) 76 Cal.App.3d 896, 900 (*Sybron*) ["Under California law liquidated damages not reasonably related to actual damages are unenforceable and void as penalties"].) "[A] court cannot validly enter a judgment or order which is void even if the parties agree to it." (*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 13.)

Accordingly, a stipulated judgment that includes an unlawful liquidated damages provision is void and may be vacated under section 473(d). Any other rule effectively would insulate such provisions from challenge and render the prohibition against them meaningless.

3.     Standard of Review

The central question presented is whether the stipulation for entry of judgment is a permissible liquidated damages provision or a void and unenforceable penalty under section 1671(b). Several cases have assumed this is a question of law subject to de novo review. (*Jade Fashion & Co. Inc. v. Harkham Industries, Inc.* (2014)

11

229 Cal.App.4th 635, 646 (*Jade Fashion*); *Purcell*, *supra*, 224 Cal.App.4th at p. 974; *McGuire v. More-Gas Investments, LLC* (2013) 220 Cal.App.4th 512, 523; *Greentree*, *supra*, 163 Cal.App.4th at p. 499; *Harbor Island Holdings v. Kim* (2003) 107 Cal.App.4th 790, 794.) Recently, however, one court carefully examined the nature of this inquiry and concluded this issue may depend on factual determinations more appropriately reviewed under the substantial evidence standard, and it becomes a question of law only when undisputed facts support a single reasonable conclusion. (*Krechuniak*, *supra*, 11 Cal.App.5th at pp. 722-725.)

The *Krechuniak* court explained: "In determining the reasonableness of a provision for liquidated damages, 'the court should place itself in the position of the parties at the time the contract was made and should consider the nature of the breaches that might occur and any consequences that were reasonably foreseeable.' [Citation.] The California Supreme Court has recognized that it is essentially a factual question whether the parties reasonably estimated foreseeable damages under the prevailing circumstances [citations] that becomes a question of law when the facts are undisputed and susceptible of only one reasonable interpretation." (*Krechuniak*, *supra*, 11 Cal.App.5th at pp. 722-723.)

Neither side identified any disputed facts relating to their stipulation for entry of judgment, and therefore we review de novo the question whether the stipulation is a void and unenforceable penalty or a permissible liquidated damages provision.

4.     The Stipulated Judgment Is an Unenforceable Penalty

Appellants contend the trial court erred in denying their motion to vacate the stipulated judgment as void. According to Appellants, the stipulated judgment was void as a matter of law because no reasonable relationship exists between the damages that could have been anticipated based on their failure to pay the $75,000 settlement amount and the stipulated judgment for more than $300,000. We agree.

12

In *Greentree*, we applied the foregoing principles regarding liquidated damages to reverse a stipulated judgment on facts similar to this case. There, the plaintiff sued the defendant for breach of contract, alleging the defendant failed to pay the plaintiff $45,000 for financial services. The parties reached a settlement they memorialized in a stipulation for entry of judgment, which provided the defendant would pay the plaintiff $20,000 in two installments, and if the defendant failed to make either payment the plaintiff could enter judgment against the defendant for the full amount sought in the plaintiff's complaint, including interest and attorney fees. (*Greentree*, *supra*, 163 Cal.App.4th at p. 498.) The stipulation also stated that "'[e]ach party disclaims any admission of wrongdoing, fault, liability, or violation of law.'" (*Id*. at p. 500.) The defendant failed to make the initial payment and the plaintiff asked the trial court to enter judgment against the defendant for more than $61,000, consisting of $45,000 in damages for breach of the financial services contract, $14,000 in prejudgment interest, and $2,000 in attorney fees and costs. Over the defendant's objection the judgment was excessive, the trial court entered the requested judgment. (*Id*. at p. 498.)

We reversed because "[the parties] did not attempt to anticipate the damages that might flow from a breach of the stipulation. Rather, they simply selected the amount [the plaintiff] had claimed as damages in the underlying lawsuit, plus prejudgment interest, attorney fees, and costs. But the appellate record contains nothing showing [the plaintiff's] chances of complete success on the merits of its case . . . . [¶] Also, the $61,232.50 amount in the judgment bears no reasonable relationship to the range of actual damages the parties could have anticipated from a breach of the stipulation to settle the dispute for $20,000. '[D]amages for the withholding of money are easily determinable—i.e., interest at prevailing rates.' [Citation.] The amount of the judgment, however, was more than triple the amount for which the parties agreed to settle the case." (*Greentree*, *supra*, 163 Cal.App.4th at pp. 499-500.)

13

We further explained, "the judgment would have been enforceable if it had been designed to encourage [the defendant] to make its settlement payments on time, and to compensate [the plaintiff] for its loss of use of the money plus its reasonable costs in pursuing the payment," but the judgment for $61,000 went well beyond compensating the plaintiff for the defendant failing to pay the $20,000 settlement amount and instead impermissibly punished the defendant for its failure to pay. (*Greentree*, *supra*, 163 Cal.App.4th at p. 500; see *Purcell*, *supra*, 224 Cal.App.4th at pp. 975-976 [stipulated judgment for nearly $60,000 constituted illegal penalty for breach of settlement agreement requiring payment of $38,000]; *Sybron*, *supra*, 76 Cal.App.3d at pp. 899, 903 [stipulated judgment for $100,000 constituted illegal penalty for failure to make timely installment payment on $72,000 settlement].)

The *Greentree* plaintiff argued the amount specified in the judgment was reasonably related to the damages the plaintiff suffered based on the defendant's breach of the underlying financial services agreement. We rejected that argument because the relevant breach was the breach of the settlement stipulation, not the breach of the underlying financial services agreement. The trial court entered the judgment because the defendant breached the settlement stipulation, not because the defendant breached the underlying financial services agreement. By entering into the settlement stipulation, the plaintiff substituted the defendant's undisputed obligation to pay $20,000 for the disputed claim based on the financial services agreement, the uncertainty of what, if anything, the trier of fact might award on that claim, and the outlay of time and money required to try the claim. Accordingly, any judgment based on the settlement stipulation had to be reasonably related to the anticipated damages caused by breach of the stipulation, not breach of the underlying financial services agreement. (*Greentree*, *supra*, 163 Cal.App.4th at pp. 499-500.)

Here, Vitatech sued Appellants for breach of contract, alleging Appellants failed to pay $166,372.14 for various products Vitatech manufactured for them.

14

Appellants answered the complaint, denied liability, and asserted a variety of affirmative defenses, including that the underlying contract was unenforceable, Vitatech breached the underlying contract, and Vitatech improperly manufactured and labeled its products. On the eve of trial, and after several trial continuances, the parties agreed to a settlement, with Appellants stipulating to entry of judgment "in the full prayer of the Complaint" and Vitatech agreeing to "forbear from the filing [of the stipulation for entry of judgment and to] accept, as full settlement of its claims . . . the principal sum of Seventy-Five Thousand Dollars ($75,000), payable in one (1) payment on or before June 5, 2015."

The parties' stipulation for entry of judgment does not use the phrase liquidated damages, but its legal effect is the same as a liquidated damages provision. (*Ridgley*, *supra*, 17 Cal.4th at p. 979; *Greentree*, *supra*, 163 Cal.App.4th at p. 499; *Weber*, *supra*, 52 Cal.App.4th at p. 656.) The stipulation predetermines the amount of damages Vitatech is entitled to receive if Appellants breached the stipulation by failing timely to pay the settlement amount. The provision establishing the amount of the stipulated judgment therefore is unenforceable unless that amount bears a reasonable relationship to the amount of damages the parties could have anticipated Vitatech would suffer if Appellants breached their obligation to pay the settlement amount. (*Ridgley*, at p. 977.) Indeed, the amount of the judgment must reasonably relate to the damages likely to arise from the breach of the stipulation, not the alleged breach of the underlying contract, because it is the breach of the stipulation that allows Vitatech to enter judgment against Appellants. (*Greentree*, at pp. 499-500.)

Nothing in the stipulation or appellate record establishes a reasonable relationship between Appellants' failure to pay the $75,000 settlement amount and the $303,000 judgment. As in *Greentree*, the parties made no effort to anticipate the damages that might flow from Appellants' failure to pay the settlement amount. Instead, the parties simply selected the amount Vitatech had sought as damages in the underlying lawsuit. The record, however, lacks any evidence suggesting Vitatech was likely to

15

recover all of the damages it sought if it proceeded to trial. Moreover, we cannot conceive of any meaningful relationship between Appellants' failure to pay the amount Vitatech agreed to accept in settlement of its disputed claims and a judgment that is more than four times that amount. *Greentree* and the other cases cited above therefore compel the conclusion the stipulation for entry of judgment illegally penalizes Appellants for failing to pay the settlement amount, rather than compensating Vitatech for the reasonably anticipated damages caused by that failure.[4] (*Greentree*, *supra*, 163 Cal.App.4th at pp. 499-500; see *Purcell*, *supra*, 224 Cal.App.4th at pp. 975-976; *Sybron*, *supra*, 76 Cal.App.3d at pp. 899, 903.)

Vitatech contends *Greentree* is distinguishable because the stipulation in *Greentree* included language "'disclaiming 'any admission of wrongdoing, fault, [or] liability,'" but here Appellants judicially admitted liability and stipulated to judgment in the full amount sought in the complaint. We disagree because Vitatech misconstrues the stipulation for entry of judgment.

Although the stipulation here does not include a disclaimer of any admission of liability like the stipulation in *Greentree*, it also does not include an admission of liability on the underlying claims. As explained above, Appellants stipulated to entry of judgment "in the full prayer of the Complaint" if they failed timely to pay the $75,000 Vitatech agreed to accept "as full settlement of its claims." This language does not constitute an admission of liability for breach of the underlying contract nor does it constitute an admission of the amount of damages that breach caused. Rather, this language is nothing more than an agreement to settle a disputed claim for less

---

[4] Although we apply the de novo standard in reviewing the trial court's order, we note that we would reach the same outcome under the substantial evidence standard because no substantial evidence supports the trial court's conclusion the settlement amount was a discount from an admitted liability rather than an unenforceable liquidated damages provision.

16

than the amount demanded and a penalty if Appellants fail timely to pay the settlement amount.

Two United States District Court cases cited by Vitatech demonstrate that the language of the stipulation for entry of judgment is not an admission of liability sufficient to distinguish this case from *Greentree*. (*Seamen v. Valley Health Care Med. Group, Inc.* (C.D.Cal. 2015) 2015 U.S. Dist. LEXIS 168407 (*Seamen*); *Rose v. Enriquez* (C.D.Cal 2012) 2012 U.S. Dist. LEXIS 179711 (*Rose*).)  In *Rose*, the plaintiff sued the defendants for more than $3.6 million based on claims for extortion, fraud, racketeering, and counterfeiting.  At a mediation, the parties agreed to settle the case for "significant[ly]" less than the plaintiff sought in the complaint, and the defendants stipulated to entry of a $3.5 million judgment if they failed to make the settlement payments.  After the defendants missed several payments, the plaintiff asked the court to enter the stipulated judgment and the defendants objected that the judgment was an unenforceable penalty under section 1671(b) and *Greentree*.  (*Rose*, at pp. *3-*4.)

The *Rose* court nonetheless entered the stipulated judgment, explaining, "Here, in contrast [to *Greentree*], the Agreement memorializes evidence presented to the Mediator by the Plaintiff as to the loss caused by Defendants' fraud, counterfeiting, and other wrongful acts, and also contains an express statement of Defendants' liability. [Citation.]  This is in distinct contrast to *Greentree*, where no evidence was presented and the figure for the stipulated judgment was taken from the complaint with no inquiry or evidence and with no admission of liability.  [¶]  . . .  Where, as here, parties mutually agree upon the liability of one party and the resulting amount of damage caused by that party, a stipulated judgment in the amount of those damages will not be unreasonable." (*Rose*, *supra*, 2012 U.S. Dist. LEXIS 179711, at pp. *5-*6; see *Seamen*, *supra*, 2015 U.S. Dist. LEXIS 168407, at pp. *7-*8 [stipulated judgment in amount of prayer permissible when defendant failed to pay lesser settlement amount because defendant expressly admitted liability on underlying claims and amount of damages].)

17

Here, the stipulation for entry of judgment fails to describe any evidence presented to a neutral third party to show the damages Appellants allegedly caused by breaching the underlying contract. Similarly, Appellants did not expressly admit liability for breaching the underlying contract or the amount of damages any purported breach caused Vitatech. Instead, as in *Greentree*, the stipulation for entry of judgment merely used the amount of damages Vitatech alleged in the complaint with no inquiry or evidence to support it. Granted, the stipulation in *Greentree* included an express disclaimer of any admission of liability that is not present in this case, but the absence of that disclaimer is not sufficient to distinguish this case from *Greentree* when there also is no express admission of liability. (C.f. *Purcell*, *supra*, 224 Cal.App.4th at pp. 971-973. [finding stipulated judgment in original amount of alleged liability was unenforceable penalty even though stipulation did not include disclaimer of any admission of liability].)

Citing *Jade Fashion*, Vitatech also contends none of the foregoing cases apply to the stipulation for entry of judgment because the stipulation does not include a liquidated damages provision. Rather, the stipulation merely provides a discount on an admitted obligation based on Appellants' timely payment. This contention also fails because it again misconstrues the stipulation for entry of judgment.

In *Jade Fashion*, the plaintiff was a garment manufacturer that sold a large volume of its products to the defendant, but the defendant experienced significant cash flow problems and fell behind in its payment obligations. The defendant did not dispute that it owed $340,000 to the plaintiff, and worked out a payment plan to bring its account current and allow it to receive additional shipments from the plaintiff. The written agreement the parties signed acknowledged the precise amount of the defendant's debt, established a detailed payment schedule, and provided that the defendant could deduct $17,500 from the final payment if the defendant timely made all other payments. Under the agreement, the defendant was not entitled to the discount if even one payment was late. (*Jade Fashion*, *supra*, 229 Cal.App.4th at pp. 638-639.) The defendant was late in

18

making several payments, but made its payments before the last one was due and deducted the $17,500 from its final payment. Concluding the defendant was not entitled to the discount because of the late payments, the plaintiff refused to accept the defendant's final payment unless the defendant also paid the $17,500. When the defendant refused, the plaintiff sued for breach of contract and obtained a summary judgment against the defendant. (*Id*. at pp. 640-641.)

On appeal, the defendant cited *Greentree*, *Purcell*, and *Sybron* and argued the $17,500 discount was an unenforceable penalty because that amount bore no relationship to the few dollars in damages the plaintiff suffered when some payments were a few days late. *Jade Fashion* rejected this argument, explaining the parties in *Greentree*, *Purcell*, and *Sybron* "agreed to settle a pending lawsuit for a stipulated amount that was less than the damages alleged in the plaintiff's complaint; if the defendant breached the settlement agreement, it then would be required to pay a fixed amount of additional damages, which was disproportionately higher than the settlement amount. In contrast, the agreement [in *Jade Fashion*] was not an agreement to settle or compromise a disputed claim. Rather, it was an agreement to forbear on the collection of a debt that was admittedly owed for goods that had been delivered so long as timely installment payments were made." (*Jade Fashion*, *supra*, 229 Cal.App.4th at p. 648.) The Court of Appeal emphasized the parties' agreement provided the $17,500 discount was part of the original $340,000 debt that the defendant expressly admitted it owed, and therefore section 1671(b) did not apply and the enforceability of the discount provision did not turn on its relationship to any anticipated damages. (*Jade Fashion*, at p. 649.)

*Jade Fashion* does not apply here because the stipulation for entry of judgment was an agreement to comprise a disputed claim for less than alleged in the complaint. Unlike in *Jade Fashion*, Vitatech and Appellants agreed to the stipulation for entry of judgment on the eve of trial to resolve a pending lawsuit. As explained above, Appellants never acknowledged their liability for the underlying claims or the damages

19

Vitatech alleged in the complaint. Rather, they agreed to settle Vitatech's claims for a lesser amount and Appellants were required to pay additional damages if they defaulted. This stipulation for entry of judgment therefore is governed by *Greentree*, not *Jade Fashion*.

Finally, Vitatech argues *Sybron* is no longer good law because it was decided under section 1671's prior version, and *Greentree* and *Purcell* were wrongly decided because they applied *Ridgley* in a completely different factual context. Not so.

In *Greentree*, we considered the impact the 1977 amendments to section 1671 had on *Sybron*, and published our decision to "reaffirm that the rule set forth in *Sybron* . . . continues to apply after the intervening amendment to . . . section 1671." (*Greentree*, *supra*, 163 Cal.App.4th at pp. 497-498.) We acknowledged the amendments to section 1671 made liquidated damages provisions presumptively valid in nonconsumer contracts and shifted the burden to the party challenging a provision to show it was unreasonable. Nonetheless, we explained, "The amendment of the statute does not save a judgment that imposes a penalty bearing no proportional relationship to the damages that might actually flow from a breach. (*Ridgley*, *supra*, 17 Cal.4th at pp. 976-977.) Indeed, the Supreme Court cited *Sybron* with approval in a case analyzing the postamendment version of section 1671. (*Ridgley*, *supra*, 17 Cal.4th at p. 978.)" (*Greentree*, at p. 501, fn. 2.)

*Ridgley* involved the validity of a loan provision that required the borrower to pay a prepayment fee equal to six months of interest if the borrower sought to prepay the loan after making late interest payments. (*Ridgley*, *supra*, 17 Cal.4th at pp. 973-974.) The Supreme Court applied the foregoing principles regarding liquidated damages provisions to conclude the prepayment fee was an unenforceable penalty for late payment of interest because the amount of the fee bore no reasonable relationship to the damages the parties anticipated the borrower's late interest payments would cause. (*Id*. at pp. 976-979.) Nothing in *Ridgley* limited the standards it established regarding liquidated

damages provisions to the context of a loan, and *Greentree* and *Purcell* properly applied those standards to the stipulations for entry of judgment at issue in those cases. We see no basis for Vitatech's efforts to criticize *Greentree* and *Purcell*.

III

DISPOSITION

The order denying Appellants' motion to vacate the stipulated judgment is reversed and we remand with directions for the trial court to grant the motion and enter a new judgment for $75,000 based on the parties' stipulation for entry of judgment. The stipulation includes no provision for attorney fees or prejudgment interest and Vitatech directs us to no authority authorizing it to recover either of those items. Vitatech may apply to recover its trial court costs because nothing in the stipulation for entry of judgment relinquishes that right when Appellants failed to timely pay. (*Greentree*, *supra*, 163 Cal.App.4th at p. 502; *Sybron*, *supra*, 76 Cal.App.3d at pp. 903-904.) Appellants shall recover their costs on appeal.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.


21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VITATECH INTERNATIONAL, INC., Plaintiff and Respondent, v. ALAN R. SPORN et al., Defendants and Appellants. | G053477 (Super. Ct. No. 30-2011-00459259) ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed in the above-entitled matter on September 29, 2017, is hereby MODIFIED as follows:

1. On page 2, the first sentence of the second paragraph, beginning with "Sporn and appellant CortiSlim International, Inc.," delete the words "and liquidated damages provision" between the words "unenforceable penalty" and "under Civil Code" so the sentence reads:

> Sporn and appellant CortiSlim International, Inc. (collectively, Appellants) moved to vacate the judgment, arguing it was an unenforceable penalty under Civil Code section 1671, subdivision (b) (section 1671(b)).

2.      On page 3, the fifth sentence of the first paragraph in the Facts and Procedural History section, beginning with "The Complaint sought $166,372.14," delete the word "Complaint" at the beginning of the sentence and replace it with the word "complaint" so the sentence reads:

> The complaint sought $166,372.14 in compensatory damages, plus attorney fees and costs, based on claims for (1) breach of contract; (2) breach of oral contract; (3) breach of implied in fact contract; (4) open book account; (5) account stated; and (6) breach of guaranty.

3.      On page 6, the second sentence of the first paragraph, stating "We disagree," delete the entire sentence and replace it with the following sentence:

> We conclude CortiSlim International, Inc. has standing to appeal.

4.      On page 6, the last sentence of footnote 1, beginning with "Vitatech improperly raised," delete the word "file" between the words "rather than" and "a separate motion" and replace it with the word "by" so the sentence reads:

> Vitatech improperly raised the issue in its brief rather than by a separate motion.

5.      On page 17, the first sentence of the first full paragraph and the accompanying case citations, beginning with "Two United States District Court cases," delete the word "Two" at the beginning of the sentence and replace it with the words "Vitatech's reliance on two," delete the words "cited by Vitatech demonstrate" and replace them with the words and punctuation "is misplaced.  These cases support, rather than undermine, our conclusion," and move the case citations to *Seamen* and *Rose* between the two sentences created so the beginning of this paragraph reads:

> Vitatech's reliance on two United States District Court cases is misplaced. (*Seamen v. Valley Health Care Med. Group, Inc.* (C.D.Cal. 2015) 2015 U.S. Dist. LEXIS 168407 (*Seamen*); *Rose v. Enriquez* (C.D.Cal 2012) 2012 U.S. Dist. LEXIS 179711 (*Rose*).)  These cases support, rather than

2

undermine, our conclusion that the language of the stipulation for entry of judgment is not an admission of liability sufficient to distinguish this case from *Greentree*.

6. On page 17, the case citations at the end of the last paragraph that continue on page 18, beginning with "(*Rose*, *supra*, 2012 U.S. Dist. LEXIS," delete "; see" between "pp. *5-*6" and "*Seamen*, *supra*" and insert ".)" and delete the surrounding commas and the word ", *supra*," following the word "*Seamen*" and replace them with the words and punctuation "relied on *Rose* to reach a similar result. (" before the bracket statement starting with "[stipulated judgment" so that the case citations and a new sentence read:

(*Rose*, *supra*, 2012 U.S. Dist. LEXIS 179711, at pp. *5-*6.) *Seamen* relied on *Rose* to reach a similar result. (2015 U.S. Dist. LEXIS 168407, at pp. *7-*8 [stipulated judgment in amount of prayer permissible when defendant failed to pay lesser settlement amount because defendant expressly admitted liability on underlying claims and amount of damages].)

7. On page 18, the second sentence of the second full paragraph, beginning with "Rather, the stipulation merely provides," insert the words "Vitatech argues" between the words "Rather," and "the stipulation merely provides" so the sentence reads:

Rather, Vitatech argues the stipulation merely provides a discount on an admitted obligation based on Appellants' timely payment.

8. On page 19, the first sentence of the last partial paragraph, beginning with "*Jade Fashion* does not apply," delete the word "comprise" between the words "was an agreement to" and "a disputed claim" and replace it with the word "compromise," and italicize the word "disputed" so the sentence reads:

3

*Jade Fashion* does not apply here because the stipulation for entry of judgment was an agreement to compromise a *disputed* claim for less than alleged in the complaint.

9. On page 20, the second complete sentence of the partial paragraph at the top of the page, beginning with "Rather, they agreed to settle," delete the words "were required" between the words "amount and Appellants" and "to pay additional damages" and replace them with the word "agreed" so the sentence reads:

Rather, they agreed to settle Vitatech's claims for a lesser amount and Appellants agreed to pay additional damages if they defaulted.

These modifications do not change the judgment.

Richard W. Millar, Jr., Esq., of Friedman Stroffe & Gerard has requested that we certify our opinion for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

ARONSON, ACTING P. J.

WE CONCUR:

IKOLA, J.

4